1
2
3
4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

FILED 10 JUL 20 10:42USDC-ORE

LAWRENCE JAMES SACCATO                )
            Plaintiff                )
   vs.                                )
                     )
DANIEL N. GORDON P.C.                 )
           Defendant                )
FIA Card Services, N.A.               )
          Co-Defendant               )

**Case No. 10-6111-HO**

**Trial By Jury Demanded**

5
6
7
8
9

# MOTION IN OPPOSITION TO SUMMARY JUDGMENT and
# MOTION IN OPPOSITION TO DISMISS

10  Comes now the Plaintiff Lawrence James Saccato and hereby submits his opposition to the

11  Defendant Daniel N. Gordon P.C.'s Motion to Dismiss. The Plaintiff brings this action against

12  the Defendant as a result of Defendant, Daniel N. Gordon P.C., violation(s) of the Fair Debt

13  Collection Practices Act (FDCPA) 15 U.S.C. § 1692-1692p. and the Co-Defendant FIA Card

14  Services a.k.a. Bank of America, for violation(s) of the(FCRA) Credit Reporting Act 15 USC

15  §1681, *et seq.*

16

17  This case is not about any alleged monies, alleged monies owed, or alleged accounts, or judgments

18  but rather what Defendant Daniel N. Gordon & FIA Card Services did or did not do when

19  challenged under FDCPA and the FCRA. These laws are geared directly at the provider of

20  information to credit reporting agencies and debt collection practices compliance. It is what they

21  are suppose to do when challenged in credit reporting and debt collection not about accounts owed

22  or claimed to be owed.

23

24  The issues in this complaint are not of any alleged debt but the methods used by Defendant

25  Daniel N. Gordon P.C. violations of FDCPA 15 U.S.C. §§1692-1692p.  Specifically, Plaintiff has

26  incurred damages by virtue of Defendant having used harassment, oppression and abuse in the

27  unfair and unconscionable methods conducted with regard to and in conjunction with that

28  specified in FDCPA 15 U.S.C. §1692 § 802:

29
30  **Congressional findings and declaration of purpose**
31  **(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection**
32  **practices by many debt collectors. Abusive debt collection practices contribute to the**
33  **number of personal bankruptcies, to marital instability, to the loss of jobs, and to**
34  **invasions of individual privacy;**
35
36  and also in conjunction with FDCPA 15 U.S.C §§1692(e) A *debt collector may not use any false,*

37  *deceptive, or misleading representation or means in connection with the collection of any debt.*

38  The Plaintiff has incurred much personal, and financial damages as a result of Defendant Daniel

39  N. Gordon P.C. actions, pursuant to their violations of FDCPA 15 U.S.C. § 16929(d)(e)(f)(g); and in

40  their continued and unconscionable activities against Plaintiff.   The Defendant Daniel N. Gordon

41  P.C. has failed to adequately and competently validate any alleged debt, and continued collection

42  activities.

43

44  It is ludicrous to believe and simply assume that "what the 'debt collector' says is allegedly owed

45  is absolutely to be taken as what is being owed,"   The Consumer has the right to demand strict

46  proof of any alleged claim that is being demanded from them.  How is one to know if there are any

47  mistakes, omissions, error in claim, or especially what exactly the claim entails, without being

48  provided with the particulars regarding that claim? See *Spears v. Brennan,* Issue Four.

49  *Spears* **v.** *Brennan,* **Indiana Court of Appeals, March 26,2001, Issue Four: "Finally, we address**
50  **Spears' claim that Brennan violated 15 U.S.C. § 1692g(b) when he failed to cease collection of the**
51  **debt after receiving Spears' written notification, within the thirty-day debt validation period,**
52  **that Spears was disputing the debt 15 U.S.C. § 1692g(b) reads: If the consumer notifies the debt**
53  **collector in writing within the thirty-day period described in subsection (a) of this section that**
54  **the debt, or any portion thereof, is disputed, or that the consumer requests the name and**
55  **address of the original creditor, the debt collector shall cease collection of the debt, or any**
56  **disputed portion thereof, until the debt collector obtains verification of the debt or a copy of**
57  **a judgment, or the name and address of the original creditor, and a copy of such verification**
58  **or judgment, or name and address of the original creditor, is mailed to the consumer by the**
59  **debt collector.**
60  **I5 U.S.C. § 1692g(b) (emphasis added). On November 12, 1996, nineteen days after the date**
61  **of Brennan's debt collection letter, Spears' counsel Shepard sent Brennan a letter declaring**
62  **that Spears "disputes your debt collection-related allegations, denies the same, and demands**
63  **strict proof and verification thereof." Record at 21. As such, Brennan should have ceased**

64  his debt collection efforts immediately upon receiving that letter. Instead, Brennan
65  proceeded to obtain a default judgment against Spears on the debt collection claim before he
66  had mailed Spears the necessary verification and, thus, violated I5 U.S.C. § 1692g(b),
67  Brennan maintains, however, that there was no violation of the FDCPA because he
68  "sent adequate verification of the debt [to Spears] in the October 30, 1996 notice
69  of claim"
70  Brief of Appellee at 13.  Specifically, Brennan claims that a copy of the consumer credit
71  contract between Spears and American General attached to the notice of claim provided
72  sufficient verification of the debt within the meaning of 15 U.S.C. § 1692g(b).
73  <u>We cannot agree.</u>
74  The contract in no way provides sufficient verification of the debt. A review of the document
75  reveals that it identifies only the terms of Spears' loan, including a 17.99% annual interest rate and
76  the original loan amount of $2,561.59. <u>The loan *agreement contains* no accounting of any</u>
77  <u>payments made by Spears, the dates on which those payments were made, the interest which had</u>
78  <u>accrued or any late fees which had been assessed</u> once Spears stopped making the required
79  payments. Indeed, the existing unpaid contract balance at the time Brennan sent the debt collection
80  notice was at least $350.00 more than the original loan amount.   Therefore, Brennan violated 15
81  *U.S.C.* § 1692g(b) when he failed to cease collection of the debt by obtaining a default
82  judgment against Spears after Spears had notified Brennan in writing that he was
83  disputing the debt but before Brennan had mailed verification of the debt to Spears.
84  See footnote. We reverse the trial court's entry of summary judgment in favor of Brennan on this
85  issue."
86  *15 U.S.C. §§ 1692g(a) and 16921,15 U.S.C. § 1692g(b) is in the nature of a statutory tort which is*
87  *completed once the debt collector fails to cease his debt collection efforts after receiving written*
88  *notification that a debtor is disputing the debt but before mailing verification of the debt to the*
89  *debtor. See Blakemore, 895 F. Supp at 984. As discussed previously, an FDCPA claim "has*
90  *nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of*
91  *collecting the debt. It does not arise out of the transaction creating the debt[.]"Azar, 874 F. Supp.*
92  *at 1318. Footnote: See 15 U.S.C. § 1692k (governing civil liability under the Act).*
93
94  The case before this Honorable Court is in regard to a 3rd party, hearsay alleged account and, as
95  outlined above in *Spears v. Brennan,* Issue Four, requires itemization.
96
97  **<u>The Indiana Court of Appeals opined that a "full ledger accounting" is proof of an alleged debt.</u>**
98  None of the claims and allegations of the Defendant Daniel N. Gordon P.C., which were challenged by
99  the Plaintiff's letter dated February 23, 2010, were ever competently validated by the Defendant.
100

101   Again the Plaintiff states this case is not about any alleged monies or alleged accounts but rather

102   what Defendant Daniel N. Gordon P.C. did or did not do when challenged under FDCPA.

103   Plaintiff asks Defendant Daniel N. Gordon P.C., Where is the term "money" in the FDCPA?

104   There exists, in the FDCPA, the word "debt collector," because any consumer, such as this

105   Plaintiff, has the right to challenge the "debt collector." Also, the words "debt collector" and "is

106   obligated to" or "must" appear together quite often throughout FDCPA.

107

108   The Defendant Daniel N. Gordon P.C. admitted receipt of a validation of debt request and failed to

109   properly validate the debt. Defendant Daniel N. Gordon attempted to provide a copy of a statement

110   that was clearly erroneous and did not even have the same account number for which the action

111   was brought against Plaintiff, claiming the erroneous statement was all that was required for a

112   response under FDCPA.  See exhibits PE 101 thru 107. The response clearly shows that the

113   Defendant Daniel N. Gordon submitted inaccurate and erroneous information and further shows

114   that the Co-Defendant FIA Card Services does not have the systems in place to prevent providing

115   inaccurate and erroneous information.

116

117   The Co-defendant, FIA Card Services , is wholly owned by NB Holding Corporation, which is

118   wholly owned by Bank of America Corporation is a creditor and furnisher of information to the

119   national credit reporting agencies within the meaning of Fair Credit Reporting Act 15 USC §1681, *et seq*.

120

121   **FCRA  § 623. Responsibilities of furnishers of information to consumer reporting agencies**
122   **[15 U.S.C. § 1681s-2]**

123   (a) Duty of furnishers of information to provide accurate information.

124   The Co-Defendant FIA Card Services have never produced evidence of their statements.  The

125   Plaintiff has not received any of the requested documents. The documents have not been

126   produced as evidence in this case and the Plaintiff has had no opportunity to object to their

127   authenticity or accuracy.

128   The Plaintiff has not given permission to anyone to share the Plaintiffs personal information such

129   as account numbers, social security numbers, bank account records, etc. Of course if these were

130   obtained during discovery the Plaintiff would have had an opportunity to object to these

4

131    documents and a motion could have been made to the court to compel by the Defendant as

132    applicable. The Plaintiff sees this information being provided to this court without due

133    process/discovery as a violation of the Plaintiffs personal information and a violation of UCC

134    Title 42 invasion of privacy which is a felony under this Title, U.C.C. - ARTICLE 9 - SECURED

135    TRANSACTIONS specifically 15 U.S.C. § 6802 : US Code - Section 6802: Obligations with

136    respect to disclosures of personal information.

137

138    **Opposition to Defendants motion for Summary Judgment:**

139    To defeat Defendants motion for summary judgment, Plaintiff need not present any direct

140    evidence of conscious or reckless disregard. Rather, he must merely present evidence from

141    which the trier of fact could deduce such disregard. *Cushman v. Trans Union Corp.*, 920 F. Supp.

142    80, 84 (E.D. Pa. 1996) ("It is not necessary for the plaintiff to produce a `smoking gun' or other

143    form of definite proof.") *aff'd* 115 F.3d 220 (3rd Cir. 1997). "Instead, where intent has not been

144    explicitly expressed, the trier of fact may deduce it from the surrounding circumstances."[30] *Ibid.*

145    The "surrounding circumstances" may include a defendant's awareness of the problems and

146    failure to take any corrective action, both of which are present here. *See, e.g., Coughlin v.*

147    *Tailhook Assn.,* 112 F.3d 1052, 1057 (9th Cir. 1997) (hotel's knowledge of prior convention-

148    related assaults and its failure to take adequate steps to prevent such occurrences supported jury's

149    finding of "conscious disregard"); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47, 649 (9th

150    Cir. 1991) (affirming award of punitive damages based on police chief's "recklessness or callous

151    indifference" to prior complaints concerning inadequate procedures); *Ingram v. Acands, Inc.*, 977

152    F.2d 1332, 1342 (9th Cir. 1992) (knowledge of health risks of asbestos and failure to provide

153    warning constituted "wanton disregard" entitling plaintiff to punitive damages).

5

154    "When willfulness is an issue, summary judgment should be granted with caution, since

155    questions such as intent or motive are presented." *Simpson v. United States*, 652 F.2d 831, 834

156    (9th Cir. 1981) ("Whether the efforts of [defendant] were so feeble as to rise to the level of

157    willfulness is a material issue of fact which should have prevented summary judgment and which

158    now warrants reversal."). *See also Miller*, 945 F.2d at 1467. In numerous FCRA cases, courts

159    have consistently denied defendant's motion for summary judgment on punitive damages.

160    *Wiggins*, 848 F. Supp. at 219 ("this Court cannot say that the record shows willfulness, or the

161    absence of willfulness, as a matter of law. Rather, the Court believes that it should be left to the

162    jury to resolve the disputed facts and decide whether those facts demonstrate a willful failure to

163    follow reasonable procedures.") (Citing *Collins v. Retail Credit Co.*, 410 F. Supp. 924, 931-32

164    (E.D. Mich. 1976).

165    2. Defendant claims there is no private right of action under 15 U.S.C. § 1681s-2(a), which

166    governs the duty of furnishers. The Plaintiff will clarify the law from the FCRA,

167    **§ 602. Congressional findings and statement of purpose [15 U.S.C. § 1681]**

168    (a) *Accuracy and fairness of credit reporting.* The Congress makes the following findings:

169    (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate

170    credit reports directly impair the efficiency of the banking system, and unfair credit

171    reporting methods undermine the public confidence which is essential to the

172    continued functioning of the banking system.

173    **§ 603. Definitions; rules of construction** [15 U.S.C. § 1681a]

174    (a) Definitions and rules of construction set forth in this section are applicable for the

175    purposes of this title.

176

177    (b) **The term "person" means any individual, partnership, corporation, trust, estate,**

178    **cooperative, association, government or governmental subdivision or agency, or other**

179    **entity.**

180    (c) **The term "consumer" means an individual.**

181

182    **617. Civil liability for negligent noncompliance** [15 U.S.C. § 1681o]

183    (a) *In general.* **Any person** who is negligent in failing to comply with any requirement

184    imposed under this title with respect to any consumer is liable to that consumer in an

185    amount equal to the sum of

186    (1) any actual damages sustained by the consumer as a result of the failure; and

187    (2) in the case of any successful action to enforce any liability under this section, the

188    costs of the action together with reasonable attorney's fees as determined by the court.

189    (b) *Attorney's fees.* On a finding by the court that an unsuccessful pleading, motion, or other

190    paper filed in connection with an action under this section was filed in bad faith or for

191    purposes of harassment, the court shall award to the prevailing party attorney's fees

192    reasonable in relation to the work expended in responding to the pleading, motion, or

193    other paper.

194    **§ 623. Responsibilities of furnishers of information to consumer reporting agencies**

195    [15 U.S.C. § 1681s-2]

196    (a) **Duty of Furnishers of Information to Provide Accurate Information**

197    (1) Prohibition

198    (A) *Reporting information with actual knowledge of errors.* A person shall not

199    furnish any information relating to a consumer to any consumer reporting

200    agency if the person knows or has reasonable cause to believe that the information is inaccurate.

201    (B) *Reporting information after notice and confirmation of errors.* A person shall

202    not furnish information relating to a consumer to any consumer reporting agency if

203    (i) the person has been notified by the consumer, at the address specified by

204    the person for such notices, that specific information is inaccurate; and

205    (ii) the information is, in fact, inaccurate.

206    (C) *No address requirement.* A person who clearly and conspicuously specifies to

207    the consumer an address for notices referred to in subparagraph (B) shall not

208    be subject to subparagraph (A); however, nothing in subparagraph (B) shall

209    require a person to specify such an address.

210    (D) *Definition.* For purposes of subparagraph (A), the term "reasonable cause to

211    believe that the information is inaccurate" means having specific knowledge, other than solely

212    allegations by the consumer, that would cause a reasonable person to have substantial doubts

213    about the accuracy of the information.

214    (2) *Duty to correct and update information.* A person who

215    (A) regularly and in the ordinary course of business furnishes information to one or more

216    consumer reporting agencies about the person's transactions or experiences with any consumer;

217    and

218    (B) has furnished to a consumer reporting agency information that the person determines is not

219    complete or accurate, shall promptly notify the consumer reporting agency of that determination

220    and provide to the agency any corrections to that information, or any additional information, that

221    is necessary to make the information provided by the person to the agency complete and

222    accurate, and shall not thereafter furnish to the agency any of the information that remains not

223    complete or accurate.

224    (3) *Duty to provide notice of dispute.* If the completeness or accuracy of any information

225    furnished by any person to any consumer reporting agency is disputed to such person by a

226    consumer, the person may not furnish the information to any consumer reporting agency without

227    notice that such information is disputed by the consumer.

228    **Case Law to Support private right of action under 15 U.S.C. § 1681s-2(a),**

229    Dornhecker  ro. Ameritech Corp., 99 F. Supp. 2d 918 (N.D. Ill. 2000).

230    A U.S. district court held that the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681 et seq.,

231    permits consumers to bring private causes of action against furnishers of information to credit

232    reporting agencies who fail to properly investigate disputed credit information.

233    Here, a telephone services provider opened phone service accounts on behalf of third persons

234    who fraudulently used the names of other individuals. The provider subsequently enlisted the

235    services of collection agencies to satisfy the debts on the accounts. After being made aware of

236    the debts, the individuals whose names had been used notified the credit reporting agencies of

237    the fraud. After the individuals, collection agencies, and credit reporting agencies notified the

238    provider of the dispute, the provider reportedly failed to investigate. The individuals sued the

239    provider, alleging, among other claims, that defendant violated 1681s-2(b)(1) of the FCRA by

240    failing to properly investigate the disputed credit information. **Defendant moved to dismiss,**

241    **arguing that Plaintiffs lacked standing because the FCRA does not create a private right of**

242    **action for consumers.**

243

244

245   Denying the motion, **the court agreed with the U.S. Supreme Court's** analysis-set forth in Cort

246   v. Ash, 95 S. Ct. 2080 (1975) for determining whether an implied private right of action exists

247   under a statute. The four factors are: whether (1) the plaintiff is a member of a class for whose

248   benefit the statute was enacted; (2) the legislative history indicates congressional intent, explicit

249   or implicit, either to create or deny such a remedy; (3) implying a private remedy would frustrate

250   the underlying purposes of the legislative scheme; and (4) the cause of action is one traditionally

251   relegated to state law.

252   **May it please the Court:** the Plaintiff has disputed with the Creditor FIA/BofA and The Credit

253   Reporting Agencies in the same time period and has attached to this Motion of these mailings via

254   US Mail with Notary Certification of mailing to both the Co-Defendant and the credit bureaus.

255   The question is that during the investigation did the Co-Defendant "talk" to the Bureaus and vice

256   versa how does anyone know without proof?  Did the Defendant receive accurate information

257   from the Co-Defendant with proof other than their statement? Why did the Co-Defendant not

258   provide this alleged investigation information to the Plaintiff after they had done their alleged

259   investigation? Most likely if they had it may have prevented this suit.

260   Also the alleged account claims to be an FIA Card services account however FIA does not

261   appear in the Plaintiffs credit report, however the alleged account is identified as a Bank of

262   America account in the report.

263   **FCRA PROVIDES PRIVATE CAUSE OF ACTION AGAINST FURNISHER OF**

264   **INFORMATION**

265  Gordon v. Greenpoint Credit, 266 F.Supp.2d 1007 (S.D.Iowa2003).

266

267  **IN THE UNITED STATES DISTRICT COURT**

268  **FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

269  **RICHARD L. SHEFFER, :**

270  **Plaintiff, : CIVIL ACTION**

271

272  **v. :**

273

274  **EXPERIAN INFORMATION :**

275  **SOLUTIONS, INC., et al., : No. 02-7407**

276  **Defendants. :**

277  **MEMORANDUM AND ORDER**

278  **SCHILLER, J. February , 2003**

279  In its motion, Sears contends that Plaintiff's claim under the FCRA should be dismissed

280  because consumers have no private right of action against a credit furnisher under 15 U.S.C. §

281  1681s-2(b). In the alternative, Sears argues that Mr. Sheffer's allegations are legally insufficient

282  because Plaintiff has failed to allege that a credit reporting agency has sent a dispute verification

283  form to Sears. Sears also moves for the dismissal of Mr. Sheffer's defamation claim, arguing that

284  the claim is preempted by the FCRA. With respect to the issue of whether § 1681s-2(b) creates a

285  cause of action for a consumer against a furnisher of credit information, Sears correctly notes

286  that courts have reached different conclusions.

287  However, a clear majority of courts that have addressed this issue has "effectively

288  recognized Congress' obvious intent [to] create a private cause of action through § 1681s-2."

289  *Vazquez-Garcia v. Trans Union De P.R., Inc.*, 222 F. Supp. 2d 150, 155 (D.P.R. 2002); *see also*

290  *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1058 (9th Cir. 2002) (describing

291  purpose

292  of § 1681s-2(b) as "provid[ing] some private remedy to injured consumers"). The reasoning in

293  support of the majority view has been aptly summarized:

294     The civil liability sections, 15 U.S.C. § 1681n and 1681o, explicitly provide a private right of

295     action for consumers wishing to enforce any provision of the Fair Credit Reporting Act against

296     "any person" who either "willfully fails to comply" or is "negligent in failing to comply." Absent

297     any explicit limitation, the plain language of 15 U.S.C. §§ 1681n, 1681o, 1681s-2(b) and (c)

298     provide a private right of action for a consumer against furnishers of information who have

299     willfully or negligently failed to perform their duties upon notice of a dispute. Furthermore, the

300     negative inference of explicitly precluding a consumer's right of action for violations of §

301     1681s-2(a) is that they are preserved in § 1681s-2(b). Accordingly, the plain language of the Fair

302     Credit Reporting Act compels the conclusion that there is a private right of action for consumers

303     to enforce the investigation and reporting duties imposed on furnishers of information.

304

305     **Defendant Daniel N. Gordon P.C., states that the Plaintiff Fails to State a Claim upon**

306     **which relief can be granted:**

307     In considering a motion to dismiss for failure to state a claim upon which relief can be granted,

308     courts must accept as true all of the factual allegations pleaded in the complaint and draw all

309     reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied*

310     *Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir.

311     2001).

312     Furthermore, a motion to dismiss will only be granted if it is clear that relief cannot be granted to

313     the Plaintiff under any set of facts that could be proven consistent with the complaint's

314     allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355

315     U.S. 41, 45-46 (1957); *Erickson*, 127 S.Ct. at 2200.

316

317

318   **In** *Erickson*.....the Supreme Court stressed the ***pro se*** status of the plaintiff in *Erickson*

319   — a far cry from the highly sophisticated antitrust counsel in *Bell Atlantic*: The Court of

320   Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more

321   pronounced in this particular case because petitioner has been proceeding, from the litigation's

322   outset, without counsel. A document filed pro se is " to be liberally construed," *Estelle [v.*

323   *Gamble]*, 429 U.S. [97] at 106, 97 S.Ct. 285, and " a pro se complaint, however in-artfully

324   pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid.*

325   (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) (".. All pleadings shall be so

326   construed as to do substantial justice" ).

327   **And**

328   Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim

329   showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need

330   only "'give the defendant fair notice of what the ... claim is and the grounds upon which it

331   rests.'" *Bell Atlantic Corp. v. Twombly*,  550 U.S. ----, ----, 127 S.Ct. 1955, --- L.Ed.2d ----, ---- -

332   ---- (2007) (slip op., at 7- 8) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d

333   80 (1957)).

334   In addition, when ruling on a Defendant's motion to dismiss, a judge must accept as true

335   all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra*, at 1955, 127

336   S.Ct. 1955 (slip op., at 8-9) (citing *Swierkiewicz v  Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122

337   S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104

338   L.Ed.2d 338 (1989);  *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90

339   (1974));  *Erickson*, 127 S.Ct. at 2200.

340
341   **Summary Judgment:**
342
343   "Summary judgment is appropriate if the evidence read in the light most favorable to the

344    nonmoving party, demonstrates that there is no genuine issue of material fact, and that the

345    moving party is entitled to judgment as a matter of law." *Bullock v. Gomez*, 929 F. Supp. 1299,

346    1301-1302 (C.D. Cal. 1996), *citing* Fed.R.Civ.P. 56(c). In reviewing the evidence tendered in

347    support of and in opposition to the motion, "the evidence of the non-movant is to be believed,

348    and all justifiable inferences are to be drawn in the non-movant's favor." *Id.* at 1302 *See also*

349    *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995) (any and all

350    inferences that a jury could reasonably draw in favor of the non-moving party must be so drawn

351    by the Court).

352    For purposes of the instant motion, once plaintiff tenders sufficient evidence from which the

353    jury *could* infer liability, it is for the jury to resolve the factual disputes and ultimately to "judge

354    the adequacy of consumer reporting agency procedures." *Bryant*, 689 F.2d at 78 ("Each case

355    under[15 U.S.C. § 1681e(b)] will vary on the facts, and each must be judged on its own merits"

356    using a reasonableness standard.). *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249,

357    106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ( "at the summary judgment stage the judge's function

358    is not himself to weigh the evidence and determine the truth of the matter" ). Thus, TRW can

359    only prevail on its motion for summary judgment by negating all possibilities that a reasonable

360    jury could infer that it failed to comply with the FCRA provision at issue. *Ibid.* (in order to

361    prevail on summary judgment, the moving party must "foreclose the possibility of the existence

362    of certain facts from which 'it would be open to a jury . . . to infer from the circumstances' that [a

363    violation had occurred].").

364

365    **Summation:**

366

14

367    The Plaintiff has disputed with the Furnisher/Co-Defendant and the Credit Bureaus in the same

368    time frame, certification of mailings are attached. The OCC, Federal Reserve Board, FDIC, OTS,

369    NCUA, and the FTC (Agencies) issued a joint final rule (Final Rule) under Section 312 of the

370    Fair and Accurate Credit Transactions Act of 2003 (FACT Act), which amends the Fair Credit

371    Reporting Act (FCRA). Section 623 of the FCRA describes the responsibilities of persons that

372    furnish information about consumers (furnishers) to credit reporting agencies (CRAs). The Final

373    Rule addresses the accuracy and integrity of reported information and furnishers' responsibility

374    to reinvestigate disputes based on direct disputes from consumers. Furnishers are also required to

375    establish policies and procedures to implement the requirements.

376    **The Final Rule will become effective on July 1, 2010.**

377

378    The Plaintiff moves this honorable court to Dismiss Motion To Dismiss and Summary Judgment

379    and set these proceedings to Rule 26f.

380

381    Dated this ___19th___ of July, 2010

382

383                                                    Respectfully Submitted,

384
385                                                    _Lawrence James Saccato_
386                                                    Lawrence James Saccato
387                                                    ProSe'
388                                                    C/O 6387 Old 99 S
389                                                    Roseburg, Oregon 97471
390                                                    E-mail: ljsaccato@gmail.com

February 23, 2010

DANIEL N GORDON, P.C.

PO BXO 22338

EUGENE, OR 97402

Re: Acct #4264 2939 4916 3590

Dear Collector:

Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g that your claim is disputed and validation is requested.

This is not a request for "verification" or proof of my mailing address, but a request for VALIDATIN made pursuant to the above named Title and Section. I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

Please provide me with the following: a simple accounting of the debt, the name and address of the original creditor, and the original account number. Also, please show me that you are licensed to collect in my state and provide me with your license numbers and your Registered Agent.

Your anticipated cooperation in this regard is greatly appreciated.

Best Regards,

LARRY SACCATO

PE 02

# Daniel N. Gordon, P.C.

Attorneys and Counselors at Law
Serving the Pacific Northwest

4023 W 1st Avenue
P.O Box 22338
Eugene, OR 97402
Phone 541-342-2276
Toll Free 800-311-8566

Larry J Saccato
Po Box 143
Glide Or 97443-0143

**Daniel N. Gordon**
Licensed in Oregon, Washington, and Idaho
**Matthew R. Aylworth**
Licensed in Oregon, Washington, and Idaho
**Lindsay K. Wostmann**
Licensed in Oregon and Washington

September 10, 2009

Dear Larry J Saccato:

This firm has been retained with the authority to file a lawsuit against you for a debt owed by you to FIA CARD SERVICES, LLC. Demand is hereby made upon you for payment in the sum of $24207.37.

Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

At this time, no attorney has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, your account will be reviewed by an attorney to determine whether to exercise the authority given to this firm to sue you.

This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

**DANIEL N. GORDON, P.C.**

| Larry J Saccato | Creditor | Account Number | Reference Number |
|---|---|---|---|
| Po Box 143 | FIA CARD SERVICES, | | |
| Glide Or 97443-0143 | N.A. | 4264293997810852 | 6011200753 |

**Total Amount Due:** $24207.37
**Total Amount Enclosed:** _____

We will gladly accept your payment by Visa, MasterCard or Discover.

Mail Payments To:

Daniel N. Gordon P.C.
P.O. Box 22338
Eugene, OR 97402

To make a payment online visit www.dgordonpc.com.

| CARD NUMBER | 3 DIGIT CODE FROM BACK OF CARD |
|---|---|
| SIGNATURE | EXPIRATION DATE |
| PRINTED NAME | I AUTHORIZE THE CREDIT CARD PAYMENT FOR THE AMOUNT SHOWN BELOW |
| | **PAYMENT AMOUNT** |
| | $ |

Pl' Ex    3.

1          MR. AYLWORTH:  If I may, I'm going to object to the

2    fact that I'm a fact witness, and then I'm going to answer,

3    just so that you understand.  This is a representation, and FIA

4    Card Services maintains the debt.

5          MR. SACCATO:  Okay.  Very well.  And has this

6    account been assigned to your firm?

7          MR. AYLWORTH:  No.  Same answer, same question.

8          MR. SACCATO:  Thank you.  And I think it's going to

9    be answered with that document right there, but did you or your

10   firm receive a validation of debt request for this account?

11         MR. AYLWORTH:  Yes.

12         MR. SACCATO:  Okay.  And I believe it's a -- were

13   you going to enter that as an exhibit or not?

14         MR. AYLWORTH:  If you have no objection, I'll offer

15   it.

16         MR. SACCATO:  Well, yeah, I would like a copy of

17   it.

18         MR. AYLWORTH:  You can have this very copy

19   (handing).

20         MR. SACCATO:  Okay.  Thank you.

21         MR. AYLWORTH:  And because of that, I would like to

22   offer Plaintiff's Exhibit 3.

23              (Plaintiff's Exhibit 3 offered.)

24         THE ARBITRATOR:  Any objection to 3?

25         MR. SACCATO:  Is that that?

```
 1              THE ARBITRATOR:  Yes.

 2              MR. SACCATO:  Yeah.  No problem.  No problem.

 3              MR. AYLWORTH:  And I --

 4              THE ARBITRATOR:  It will be received.

 5                   (Plaintiff's Exhibit 3 received.)

 6              MR. SACCATO:  You can have the copy --

 7              MR. AYLWORTH:  And, actually, I do have only one

 8  copy today with me.

 9              MR. SACCATO:  Well, he can take it and then maybe

10  he can just mail a copy down.

11              THE ARBITRATOR:  Or you can take it and you can

12  make copies and --

13              MR. SACCATO:  Or we can make a copy, whatever.  Or,

14  yeah, I can make a copy and send it up to you.

15              And then on the validation of debt request, the one

16  dated February 23rd, did you respond to that?

17              MR. AYLWORTH:  I am not aware of whether or not any

18  response was made to that.  Can we call it Defendant's 104 and

19  offer it?

20              MR. SACCATO:  Sure.

21                   (Document marked for identification as

22                   Defendant's Exhibit 104.)

23                   (Defendant's Exhibit 104 offered.)

24              THE ARBITRATOR:  Which is that now?

25              MR. AYLWORTH:  That's the --
```

1          MR. SACCATO:  That's the one that I -- oh, go

2 ahead.

3          MR. AYLWORTH:  Just for clarification sake, it is

4 the February 23rd letter --

5          THE ARBITRATOR:  Which is the request?

6          MR. AYLWORTH:  -- which we call a validation

7 request.  Yes.

8               (Defendant's Exhibit 104 received.)

9          MR. SACCATO:  And you're unaware whether they

10 responded?

11          MR. AYLWORTH:  That's right.  I don't know.  I

12 would guess that we did not because of the timing.

13          MR. SACCATO:  Okay.  And we've already asked a

14 couple of these, so I won't reask them.  I mean, he admitted

15 that he has no additional statements of -- Mr. Tyler -- I'm

16 sorry, Mr. Pyle admitted that he didn't think there was any

17 additional statements past this date.

18          THE ARBITRATOR:  No, no, no.  My memory is that he

19 testified that there were statements up to the June or July

20 date when the account was closed --

21          MR. SACCATO:  Oh, okay.  Then could I --

22          THE ARBITRATOR:  -- but that he didn't send those

23 statements to counsel.

24          MR. SACCATO:  Oh, okay.  And do you have any idea

25 why he didn't send those statements?

1          MR. AYLWORTH:  I don't know.

2          MR. SACCATO:  When you asked him for statements,

3   did he determine what ones to send you regarding this account,

4   why he like didn't go back to '07 or '06 or anything, or --

5          MR. AYLWORTH:  I have no indication as to why, but

6   we do order evidence from our clients and present whatever is

7   offered.

8          MR. SACCATO:  And it's up to them to provide you

9   with the evidence they choose?

10          MR. AYLWORTH:  That's correct, because we can't

11   produce any.

12          MR. SACCATO:  Right, but you can ask.  But I'm just

13   asking a general question.  When you ask, you just rely upon

14   what they send you.  You don't --

15          MR. AYLWORTH:  That's correct.

16          MR. SACCATO:  -- say, I would like all of the

17   statements from --

18          MR. AYLWORTH:  I can ask for anything, but I'm

19   bound by the evidence produced.

20          MR. SACCATO:  Okay.  And that's all they produced

21   to you.  They didn't produce any other statements?

22          MR. AYLWORTH:  You have what I have.  Yes.

23          MR. SACCATO:  Okay.  Thank you.

24          And when the validation of debt request was sent,

25   did you or anybody in your firm obtain a verification of the

1  alleged debt?

2       MR. AYLWORTH:  That depends on what you think

3  verification means.

4       MR. SACCATO:  That being an accounting, all of the

5  credits and debits.

6       MR. AYLWORTH:  The statements are sufficient

7  validation of debt under the Fair Debt Collection Practices

8  Act.

9       MR. SACCATO:  All right.  And there was no previous

10 judgment on this account that you're aware of?

11      MR. AYLWORTH:  There has been no judgment entered

12 on this account.

13      MR. SACCATO:  Okay.

14      MR. AYLWORTH:  Because we would be estopped from

15 suing you on this account if there was.

16      MR. SACCATO:  Okay.  And after receiving the

17 validation did you receive -- did you happen to receive a

18 dispute in this debt?

19      MR. AYLWORTH:  That's what Defendant's 104 is.

20      MR. SACCATO:  Oh, that's the dispute?

21      MR. AYLWORTH:  Yes.

22      MR. SACCATO:  All right.

23      MR. AYLWORTH:  Is it not?  I mean, you're the

24 disputer.

25      MR. SACCATO:  Well, what I'm asking -- that, I

# AFFIDAVIT OF NOTARY PRESENTMENT

State of OREGON           )

                                  ) ss.

County of DOUGLAS     )

## CERTIFICATION OF MAILING

On this 19th day of February, 2010, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Lawrence James Saccato appeared before me with the following documents listed below. I, the undersigned notary, personally verified that a document described as a Letter of Dispute was placed in an envelope and sealed by me. They were sent by United States Post Office First Class Mail to the following:

|  | Pages |
|---|---|
| Bank of America | |
| P.O. Box 17054 | 1 |
| Wilmington, DE 19850 | |

Valynn Currie, Notary Public
P.O. Box 3097
Winston, Oregon 97496

WITNESS my hand and official seal.

NOTARY PUBLIC       DATE   2/19/10

My commission expires: ____3/21____, 20 12

OFFICIAL SEAL
**VALYNN CURRIE**
NOTARY PUBLIC-OREGON
COMMISSION NO. 425005
MY COMMISSION EXPIRES MARCH 21, 2012

(Seal)

February 19, 2010

USPS First Class Mail

Larry Saccato
P.O. Box 143
Glide Oregon 97443

Bank of America
P.O. Box 17054
Wilmington, DE 19850

Social ▮▮▮▮▮▮▮

Sirs:

This is a letter of dispute.

I recently pulled my credit report and found that Bank of America (BofA) is reporting derogatory information in my account. #4264-2939-4916-3590.

I do not recall ever having this account and dispute this.

Sincerely

Larry Saccato

Larry Saccato

# AFFIDAVIT OF NOTARY PRESENTMENT

State of OREGON                    )
                                   ) ss.
County of DOUGLAS                  )

# CERTIFICATION OF MAILING

On this 19th day of February, 2010, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Lawrence James Saccato appeared before me with the following documents listed below. I, the undersigned notary, personally verified that these document(s), Letters of Dispute were placed one each in an envelope and sealed by me. They were sent by United States Post Office First Class Mail to the following:

|  | Pages |
|---|---|
| Transunion<br>P.O. Box 2000<br>Chester, PA 19022 | 1 |
| Equifax<br>P.O. Box 740241<br>Atlanta, GA 30374 | 1 |
| Experian<br>P.O. Box 9701<br>Allen, Texas 75013 | 1 |

Valynn Currie, Notary Public
P.O. Box 3097
Winston, Oregon 97496

OFFICIAL SEAL
VALYNN CURRIE
NOTARY PUBLIC-OREGON
COMMISSION NO. 425005
MY COMMISSION EXPIRES MARCH 21, 2012

WITNESS my hand and official seal.

_____    2/19/10    (Seal)
NOTARY PUBLIC               DATE

My commission expires: ____3/21____, 20_12_

USPS First Class Mail

February 19, 2010

Lawrence James Saccato
P.O. Box 143
Glide Oregon 97443

Experian
P.O. Box 9701
Allen, Texas 75013

Social # ███████████

Dear Sirs:

This is a letter of dispute.

I recently pulled my credit report and found Bank of America reporting derogatory information in my account.

I do not recall ever having this account and dispute this.

Signed

*Lawrence Saccato*

Lawrence Saccato

USPS First Class Mail

February 19, 2010

Lawrence James Saccato
P.O. Box 143
Glide Oregon 97443

TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19022-2000

Social # ███████

Dear Sirs:

This is a letter of dispute.

I recently pulled my credit report and found that BofA is reporting derogatory information in my account.

I do not recall ever having this account and dispute this.

Signed

*Lawrence Saccato*

Lawrence Saccato

USPS First Class Mail

February 19, 2010

Lawrence James Saccato
P.O. Box 143
Glide Oregon 97443

Equifax
P.O. Box 740241
Atlanta, GA 30374

Social # ███████████

Dear Sirs:

This is a letter of dispute.

I recently pulled my credit report and found that Bank of America is reporting derogatory information in my account.

I do not recall ever having this account and dispute this.

Signed

*Lawrence Saccato*

Lawrence Saccato

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing Motion in Opposition to Summary Judgement and Motion in Opposition to Dismiss Case # 10-6111-HO with Plaintiff Exhibits (PE) 101 thru 107 and Affidavit of Notary Presentment to Bank of America and Affidavit of Notary Presentment to Equifax, Experian and Transunion were sent by United States Post Office First Class Mail to:

Clerk of the Court
Wayne L. Morse
United States Courthouse
405 East Eighth Avenue
Eugene, Oregon 97401

David A Jacobs
LUVASS COBB
777 High Street, Ste 300
Eugene, Oregon 97401

Arusi R. Loprinzi
111 SW Fifth Avenue, Suite 1775
Portland, Oregon 97204

They were deposited in the United States Post Office in Winston Oregon on July 19th 2010

*LAWRENCE SACCATO*

Lawrence James Saccato, Plaintiff
c/o 6387 Old Highway 99 S
Roseburg, Oregon 97471
541-784-2284 mess.
ljsaccato@gmail.com