FILED' 10 AUG 26 07:50 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| LAWRENCE JAMES SACCATO | ) CASE NO. 10-6111 <del>08-06297</del>-HO |
|  | ) |
| Plaintiff, | ) ORDER |
|  | ) |
| vs. | ) |
|  | ) |
| DANIEL N. GORDON, P.C., FIA CARD | ) |
| SERVICES aka Bank of America | ) |
|  | ) |
| Defendants. | ) |

## Introduction

*Pro se* plaintiff Lawrence Saccato filed this action on April
30, 2010, alleging violations of the Fair Credit Reporting Act
(FCRA)by defendants Daniel Gordon, P.C. (Gordon), a third party
debt collector and FIA Card Services, N.A[1]., (FIA).  [#1].  Saccato
brings six "counts" against the defendants alleging various
violations of the FCRA and seeking: general damages totaling

------

[1]     FIA is wholly owned by NB Holdings Corp which is wholly
owned by Bank of America Corporation. [#5].

1 - ORDER

$72,000, damages of $12,000 for every month Gordon has failed to update plaintiff's credit reports and punitive damages of $150,000 . [#1-pp.4, 6, 7, 9, 11].

Plaintiff also seeks injunctive relief requesting the court to order: removal of any "derogatory information" from the four major credit reporting agencies, a letter indicating this has been done, that defendants cease and desist any further collection activities and a bar against selling or transferring the account to any other credit agency and from re-entering the erroneous information in plaintiff's future credit reports. [#1-pp.11-12].

Defendant Gordon moves for summary judgment on all claims against it. [#6]. Defendant FIA answers and asserts two affirmative defenses - insufficient service of process and failure to state a claim. [#3]. Defendant FIA also moves to have the discovery and pretrial deadlines extended 120 days[2]. [#16]

Discussion

Defendant Gordon (a law firm retained by FIA Card Service to collect debts), moves for summary judgment on all claims against it, asserting that it has not violated the FCRA because it did not furnish any credit reporting agency with any information about plaintiff and did have a permissible purpose in obtaining plaintiff's credit report. [#7-p.2]. Gordon, in conformation

---

[2]     This motion was granted by the court in oral argument on August 24, 2010.

with the Local Rules, filed a Concise Statement of Material Facts in support of it's Motion for Summary Judgment.  [#8].

Local Rule 56.1(b) states that "[o]pposition to a motion for summary judgment must include a separately filed response to the separate concise statement that responds to each numbered paragraph of the moving party's facts by: (A) [a]ccepting or denying each fact contained in the moving party's concise statement; or (B) [a]rticulating opposition to the moving party's contention or interpretation of the undisputed material fact.

Although plaintiff failed to directly respond to Gordon's Concise Statement of Material Facts [#8] as required by the Local Rules, he did file a pleading entitled "Motion in Opposition to Summary Judgment and Motion in Opposition to Dismiss" [#12], immediately prior to the court issuing it's order advising him of the federal summary judgment standards.  [#13].  This along with his later filed "Response to Defendant Gordon PC's Concise Statement of Facts", will be construed by this court as plaintiff's response to Gordon's Concise Statement of Material Facts [#8].  Pursuant to the Local Rules any facts not specifically denied will be deemed admitted.

## 1.    **Undisputed Facts:**

Plaintiff in his "Response to Defendant Gordon PC's Concise Statement of Facts", agrees to dismiss all his claims against

Gordon asserted under the FCRA[3].  [#15-p.1].

Gordon, not having any contact with the credit agencies, did not receive any notice from a credit or consumer reporting agency that plaintiff was disputing his debt.  [#8-p.2,¶ 2; #15-p.1,¶ 2]. Gordon did receive notice of plaintiff's dispute upon receiving plaintiff's letter dated February 23, 2010.  [#12-p.16].

Gordon regularly collects delinquent consumer credit card accounts for it's client co-defendant FIA.  [#8-p.2,¶ 3].  FIA issues and administers consumer credit card accounts for Bank of America.

In 2006, Bank of America purchased MBNA, another credit card issuer.  [#10-Ex. A, pp.6-7].  Subsequent to that purchase Bank of America's credit card portfolio was renamed FIA Card Services. *Id.*  When that happened, FIA sent out revised terms and conditions to all customers including previous MBNA customers.  *Id.* Plaintiff had an account with MBNA.  [#10-Ex.B, p.1].

The revised terms and conditions sent to all customers included the provision that the "Agreement becomes effective and you agree to its terms by either using your Account or by not closing your Account within 3 days of receipt of this Agreement."

---

[3]     Plaintiff attempts to salvage his action against Gordon by attempting to amend his complaint in his response, stating that he "preserves the cause of action under Fair Debt Collection Practices Act (FDCPA) for failing to validate the alleged account and continued collection activity without proof of any alleged account."  [#15-p.1,¶ 1].

4 - ORDER

[#10-Ex. 1- p.1].  Plaintiff in sworn testimony, admitted that he had a credit card with MBNA that later became associated with Bank of America, which he used for personal purchases.  [#10-Ex.B-p.1]. Plaintiff also admitted that he lost his ability to make payments on his account after losing his job and sought debt settlement assistance in November of 2008.  [#10-Ex. B-p.2].

On September 10, 2009, defendant Gordon received a request from FIA to collect a credit card debt allegedly owed by plaintiff.  *Id.*  FIA provided Gordon with plaintiff's credit card account number, date of birth and Social Security number and told Gordon that plaintiff had last made a payment on his account on February 17, 2009 and owed a total of $24,207.37.  *Id.*  Based on the information provided by FIA, Gordon believed that plaintiff had voluntarily sought credit from FIA and by using his credit card, had incurred the alleged debt; that he had failed to pay his bill and that Gordon was authorized to commence collection proceedings.  [#8-p.2, ¶4].

In order to obtain location information[4] on plaintiff, Gordon purchased plaintiff's credit report from Equifax.  [#8-pp2-3, ¶7]. When ordering the credit report from Equifax, Gordon identified itself as the requesting party and provided a general certification that the purpose of the request was for the

---

[4]     Gordon requested the location information to enable it to send plaintiff a demand letter and later if necessary to serve a summons and complaint upon plaintiff.  [#8-pp2-3, ¶7].

5 - ORDER

collection of an account arising out of a credit transaction initiated by plaintiff and that the information was not going to be used for any other purpose. [#8-p.3,¶8].

Plaintiff denies ever having or applying for any loan, credit card, mortgage, insurance, agreement or contract with FIA (although he does admit to having an MBNA credit card which became a Bank of America card). [#1-p.2, #10-Ex.A]. Plaintiff states that because of an alert he received through his credit monitoring service, Privacy Guard, he requested a copy of his credit report from Experian, Equifax, and Trans Union on June 9, 2009, October 24, 2009 and again in April, 2010. [#1-p.2]. It was upon inspecting those reports that plaintiff allegedly became aware of an erroneous entry indicating that he had a debt/account/revolving account with FIA. *Id.*

It *is* undisputed that Gordon sent plaintiff a letter dated September 10, 2009, informing plaintiff that the firm had been retained to collect a debt of $24,207.37, which was owed by him to FIA. [#12-Ex.3]. Approximately 5½ months later in a letter dated February 23, 2010, plaintiff responded to Gordon's letter, saying he was disputing the debt and "asking for proof of this alleged account." [#1-p.3; #12-p.16]. Because he did not receive "the account number for the February 23, 2010, request for proof" plaintiff "contacted [Gordon] on April 20, 2010 with a final notice of pending lawsuit in an attempt to settle the situation

6 - ORDER

amicably . . . ."  *Id.*

## 2.   **Fair Debt Collection Practices Act:**

Under the Fair Debt Collection practices Act (FDCPA) The
September 10, 2009, letter sent by Gordon to plaintiff complied
with the requirements set forth in 15 U.S.C. § 1692g(a) of the
FDCPA.  Specifically, Gordon enunciated the amount of the debt,
the name of the creditor to whom it was owed, a statement that
unless plaintiff disputed the debt within thirty days of receipt
of the notice the debt would be assumed to be valid, a statement
that if he did dispute the debt within the thirty day period,
Gordon would obtain verification of the debt and mail it to him
and ended by including various means by which plaintiff could pay
the debt.  [#12-Ex.3]

Thus even if the court allowed plaintiff to amend his
complaint to add a claim of violation of the FDCPA against Gordon,
it would fail.  The 30-day window of time within which the debt
collector is duty bound to validate the debt had long passed by
the time plaintiff sent his request for validation, 5½ months
later.

Given that plaintiff has already agreed to dismiss his
claim(s) under the FCRA, he therefore has no valid remaining claim
against Gordon.

///

///

7 - ORDER

## Conclusion

For the foregoing reasons, defendant Gordon's Motion for Summary Judgment is GRANTED.  [#6].  The claims against defendant Daniel Gordon, P.C., are hereby dismissed with prejudice.

IT IS SO ORDERED.

DATED this ____24th____ day of August, 2010.


_____
United States District Judge

8  Bench Memo